## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN W. RELIFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  08 CV 1266** |
| **v.** | ) | |
| | ) | **JUDGE DAVID H. COAR** |
| | ) | |
| **UNITED PARCEL SERVICE,** | ) | **MAGISTRATE JUDGE** |
| | ) | **MARTIN C.  ASHMAN** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Before this Court is a motion to dismiss filed by Defendant United Parcel Service ("UPS") against Plaintiff John W. Reliford ("Reliford") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

### STANDARD

When considering a motion to dismiss, the Court takes the allegations in the complaint as true, drawing all possible inferences in favor of the plaintiff.  *Killingsworth v. HSBC Bank Nevada, N.A.*, 509 F.3d 614, 618 (7th Cir. 2007).  To state a claim under federal pleading standards, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964 (2007).  In *Bell Atlantic*, the Supreme Court required a complaint to contain more than "labels and conclusions," *id.* at 1964-65, and "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.  The Seventh Circuit has emphasized, however, that *Bell Atlantic* "did not . . .

supplant the basic notice pleading standard." *Tamayo v. Blagojevich*, No. 07-2975, 2008 WL 2168638, at *8 (7th Cir. May 27, 2008). The essential requirement of a complaint is that it "give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* Moreover, when a litigant brings a pro se complaint, district courts must construe the complaint liberally and allow ample opportunity to amend the complaint if it appears a claim might have merit. *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006).

Affirmative defenses must be pleaded in conformity with Fed. R. Civ. P. 8(c). Rule 8(c)'s main purpose is to insure notice to the opposing party of any additional issues that may arise at trial so that the party is able to adequately litigate such issues. *Ft. Howard Paper Co. v. Standard Havens, Inc*., 901 F.2d 1373, 1377 (7th Cir. 1990).

## FACTS

Reliford filed a discrimination charge against UPS with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on August 15, 2007. (Mem. in Supp. of Def.'s Mot. to Dismiss Ex. 1.) He acknowledges in his "Motion Against Defendant's Motion to Dismiss Complaint" (hereinafter "Plaintiff's Response") that he received a Notice of Right to Sue from the EEOC on or about December 15, 2007. (Pl.'s Resp. at 2.)[1] He alleged that he was hired by UPS on November 7, 1997, worked for the company as a Feeder Driver, and was "terminated" on March 14, 2007. (*Id.*) In his EEOC charge, Reliford stated that he sustained a workplace injury on December 5, 2005 and made a "protected complaint" in or around February 2007. (*Id.*) He also claimed that he was discriminated against

---

[1] This Court will take judicial notice of the EEOC charge, attached as an exhibit to UPS's Memorandum in Support of Defendant's Motion to Dismiss Complaint. Reliford mentions that he filed a charge with the EEOC. (Pl.'s Resp. at 3.) He also notes the date he received the Notice of Right to Sue. (Pl.'s Resp. at 2.) This date, December 15, 2007, is consistent with the date of the exhibit, which states that the Notice was mailed on December 3, 2007. Reliford does not dispute the language cited by UPS or suggest that the charge attached as an exhibit is incorrect or incomplete.

because of his age and that he suffered retaliation for engaging in a protected activity in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").  (*Id.*)

On March 3, 2008, Reliford filed a Complaint with this Court alleging that UPS engaged in numerous discriminatory actions against him because of his age and in retaliation for "addressing the issue of age discrimination."  (Compl. at 1.)  The numbered counts[2] in the Complaint allege that UPS:  (1) was "reluctant to hire [him] until pressured"; (2) used "unfair training tactics" to attempt to terminate him; (3) told its trainers to "give [him] inadequate training and then flunk [him]"; (4) attempted to prevent him from becoming certified; (5) falsified his work records to prevent him from becoming eligible for a pension; (6) "forced [him] to sign a separation agreement before they would do the right thing concerning [his] worker's compensation injury"; (7) breached a collective bargaining agreement; and (8) deliberately interfered with his ability to perform on the job by providing him with "unsafe and defective equipment."  (*Id.*)  Reliford contends that this treatment was "a continuous practice."  (*Id.* at 3.) He also alleges that he contacted a number of people to complain about these acts, including his direct supervisors and managers, UPS's local and national human resources departments, his local union, and UPS's CEO.  (*Id.* at 2.)

Reliford admits in his Complaint that he executed an Employee Separation Agreement ("Agreement") in March 2007.  (*Id.* at 3.)  The Agreement states that Reliford "freely and voluntarily resigns from his employment at the Company."  (Mem. in Supp. of Def.'s Mot. to Dismiss Ex. 2 ¶ 1.)  It also states that Reliford released UPS from

> any and all claims, actions and causes of action, at law or in equity, known or
> unknown, directly or indirectly relating to or connected with Employee's
> employment with the Company or separation of said employment, including but

---

[2] The first page of the Complaint includes eight numbered claims, which are followed by two pages of additional allegations.  While the organization of the Complaint is somewhat unclear, these eight claims will be referred to as "counts" for the purposes of the present motion.

not limited to, any and all claims of age discrimination under the Age
Discrimination in Employment Act of 1967.

(*Id.* ¶ 2.)  In exchange for this resignation and waiver, UPS agreed to pay Reliford "the amount

of $200.00, less applicable tax withholdings."  (*Id.*)  The Agreement further states, "Employee

acknowledges that he has entered into this agreement knowingly and voluntarily with full

understanding of its terms and after having had the opportunity to seek and receive advice and

counsel . . . . Employee acknowledges that he was given a period of twenty-one days within

which to consider this agreement…." (*Id.*)

Reliford contends that UPS "coerce[d]" him into signing the Agreement in order to

terminate him because of his age.  (Compl. at 3.)  He alleges that he was injured on the job on

December 9, 2005,[3] and that UPS "used the settlement of the truck accident to coerce [him] into

the signing of [the] Employee Job Separation Agreement."  (*Id.*)  He states in his Complaint,

"The agreement was signed by me in the effort to secure back pay and insurance treatment for

my wife to save her life and to prevent foreclosure on our home along with other very important

reasons." (*Id.*)  In his Response, Reliford adds that UPS "used illegal tactics to coerce [him] into

signing an Employee Separation Agreement while withholding [his] Workers' Compensation

payments and medical benefits."  (Pl.'s Resp. at 1.)  He repeats that he believed the benefits were

necessary to save his wife's life.  (*Id.* at 2-3.)  Reliford also states that the Agreement "is

currently unresolved" and that he remains an "active UPS employee."  (*Id.* at 2.)


## ANALYSIS


---

[3] In his EEOC Charge, Reliford gave the date of his workplace injury as December 5, 2005, but in his Complaint he
alleges the accident took place on December 9, 2005.  The discrepancy is irrelevant for purposes of this motion.

UPS has moved to dismiss Reliford's Complaint on the theory that Reliford released UPS from any ADEA claims when he signed the Agreement. (Mem. in Supp. of Def.'s Mot. to Dismiss at 1.) Reliford responds that, because UPS illegally coerced him into signing the Agreement, the waiver of his ADEA claims is invalid and the Complaint should not be dismissed. (*See* Compl. at 3.) UPS also contends that Reliford's claims are time-barred and that the claims in the Complaint are impermissibly beyond the scope of his EEOC charge. (Mem. in Supp. of Def.'s Mot. to Dismiss at 7-10.) For the purposes of this motion to dismiss, we find that this Court cannot hold, as a matter of law, that Reliford has waived his claims in their entirety, because the issue requires further factual development. Certain claims in the Complaint, however, must be dismissed because they are beyond the scope of the EEOC charge.

*The Waiver Agreement*

This Court may consider the Agreement as part of the pleadings, because it is referred to in Reliford's Complaint and is central to determining whether he has stated a claim. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005); Fed. R. Civ. P. 10(c).

If the Agreement is valid, Reliford's discrimination and retaliation claims must be dismissed because Reliford waived his right to pursue these claims. The terms of the Agreement are broad, and its "any and all" language is unambiguous. *See Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 568 (7th Cir. 1995) (noting that "any and all" language in a release precluded plaintiff's ADEA claim). An employee may waive ADEA rights through a settlement with his employer if he knowingly and voluntarily enters into a valid job separation agreement. *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996). If the employer demonstrates the existence of such a waiver, the burden shifts to the employee to show that the

waiver is invalid because it was not entered knowingly and voluntarily or that the employee has a defense to the waiver, such as duress. *Pierce*, 65 F.3d at 572.

UPS contends that Reliford acknowledges in his Complaint that he knowingly and voluntary waived his claims when he signed the Agreement. (Mem. in Supp. of Def.'s Mot. to Dismiss at 5.) UPS correctly states that a plaintiff may plead facts that show he is not entitled to a judgment. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007). This Court may dismiss a complaint on the basis of an affirmative defense when "the plaintiff pleads himself out of court by 'admit[ting] all the ingredients of an impenetrable defense.'" *Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed.Appx. 523 (7th Cir. 2005). Thus, if Reliford has admitted that the waiver is valid, this Court may hold that he has waived his claims.

The Complaint, however, raises some questions as to the validity of the waiver. While Reliford does not state the precise legal basis for his argument that the waiver is invalid, he does state that UPS used "illegal tactics" to "coerce" him to sign it. (Pl.'s Resp. at 1.) Given this Court's responsibility to liberally construe a pro se complaint, *Kaba*, 458 F.3d at 687, it must consider whether the waiver is invalid because Reliford did not enter into the Agreement knowingly and voluntarily or because his assent to the Agreement was procured under duress.

UPS argues that the Complaint demonstrates that Reliford entered into the Agreement knowingly and voluntarily, because he does not allege that he was unaware of the Agreement's terms or that UPS misrepresented those terms. (Mem. in Supp. of Def.'s Mot. to Dismiss at 5.) Determination of whether a release was given knowingly and voluntarily is made by assessing the totality of the circumstances, including: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the contract; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release;

(5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part. *Pierce*, 65 F.3d at 571.

Several of the preceding factors weigh in UPS's favor. Reliford has not alleged that the agreement was unclear, and the Agreement states that he was given twenty-one days to consider the Agreement and had an opportunity to seek the advice of counsel. Consideration was given in exchange for the waiver, if minimal at $200. Most importantly, the Complaint indicates that Reliford understood the content of the Agreement, which states: "The agreement was signed by me in the effort to secure back pay and insurance treatment for my wife." (Compl. at 3.) This suggests that Reliford understood what he was doing when he signed the Agreement, and that he knowingly agreed to its terms.

On the other hand, other factors weigh against the validity of the waiver. Reliford had no apparent input into the terms of the Agreement, was not represented by counsel, and states that UPS used "illegal tactics" to "coerce" him to sign.[4] This creates the possibility that, while Reliford's assent was arguably knowing, it was not voluntary. At this stage, this Court has no information about the nature of the "illegal tactics" allegedly employed by UPS. Given our responsibility to construe all allegations in the plaintiff's favor, we must assume that Reliford's assent to the Agreement was induced by improper conduct on UPS's part. Therefore, we cannot hold, as a matter of law, that Reliford knowingly and voluntarily waived his ADEA claims. Further factual development is required to determine the nature of the alleged coercion.

---

[4] This Court has no information regarding Reliford's education and business experience, other than the fact that he held a position as a UPS Feeder Driver.

Reliford may also be able to respond to the affirmative defense of waiver by claiming that he entered the Agreement under duress. In Illinois,

> Economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will, and a contract executed under duress is voidable. . . . To establish duress, one must demonstrate that the threat has left the individual "bereft of the quality of mind essential to the making of a contract."

*Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 313 (7th Cir. 1992) (quoting *Alexander v. Standard Oil Co.*, 97 Ill.App.3d 809, 423 N.E.2d 578, 582 (1981)). Duress depends on both the nature of the actions of the party inducing a promise and the mental state of the party from whom that promise is exacted. The behavior of the former must involve "some imposition, oppression, undue influence, or the taking of undue advantage." *Pierce*, 65 F.3d at 569. Heavy pressure and hard bargaining alone do not constitute duress. Rather, the pressure must have been wrongful or unlawful. *Resolution Trust*, 977 F.2d at 313.

With respect to the party coerced into signing an agreement, difficult financial circumstances or a weak bargaining position are insufficient to establish duress, provided that the other party was not responsible for creating those conditions. *Selmer Co. v. Blakeslee-Midwest Co.*, 704 F.2d 924, 928 (7th Cir. 1983). Moreover, a person who had an alternative to signing an agreement, such as resolving a dispute through litigation, cannot claim duress as a defense to the agreement. *Pierce*, 65 F.3d at 569. Rather, to claim duress, a party must be under great stress or in a state of extreme necessity or weakness. *Resolution Trust*, 977 F.2d at 313.

While Reliford does not use the term "duress" in his complaint, the language of the complaint, construed liberally, is sufficient to allege that Reliford signed the waiver under duress. *See Kaba*, 458 F.3d at 687 (although complaint did not include the word "negligence," construed liberally it alleged that prison bureau negligently failed to train and supervise its staff).

8

Reliford states that UPS "coerce[d]" him into signing the agreement by using "illegal tactics" and withholding his pay and medical benefits. (Pl.'s Resp. at 1.) He also notes his concern for his wife's life. (*Id.*) Essentially, Reliford claims that UPS exerted unlawful pressure on him and took undue advantage of the state of necessity created by his wife's illness. The fact that Reliford's wife was critically ill and that UPS was threatening to withhold her medical benefits might, construing all allegations in Reliford's favor, be sufficient to show he was "bereft of the quality of mind essential to making a contract." *Resolution Trust*, 977 F.2d at 313.

UPS, however, argues that Reliford had an alternative to signing the agreement: "Reliford could have chosen to litigate his worker's compensation claim if he did not like the idea of having to sign the Employee Separation Agreement. But he wanted the money…" (Mem. in Supp. of Def.'s Mot. to Dismiss at 7.) It is true that difficult financial circumstances are alone insufficient to constitute duress. *Selmer*, 704 F.2d at 928. Reliford, however, argues not just that his financial circumstances made it difficult to wait for the outcome of litigation. He contends that he believed the medical benefits UPS was withholding were necessary to preserve his wife's life. (*Id.* at 2-3.) This suggests that he may not have had a genuine alternative to signing the Agreement in order to preserve those benefits. Moreover, Reliford also suggests that UPS was responsible for creating his difficult financial circumstances. *C.f. Selmer*, 704 F.2d at 928 (holding that plaintiff's financial circumstances did not constitute duress because defendant was not responsible for those conditions).

Questions remain as to whether Defendant was under duress when signing the waiver. Because factual development is required to determine whether the waiver of his claims was valid, his Complaint cannot presently be dismissed on the grounds that he has waived his ADEA claims.

*The Statute of Limitations*

UPS argues that Reliford's ADEA claim is time-barred because he has alleged discriminatory acts that occurred outside of the time period dictated by the ADEA's statute of limitations. (Mem. in Supp. of Def.'s Mot. to Dismiss at 7.) A plaintiff must file a charge of age discrimination with the EEOC or equivalent state agency within 300 days after an "alleged unlawful practice" occurs. 29 U.S.C. § 626(d)(2). A failure to file a timely charge will bar a later suit. *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994). In the Seventh Circuit, courts rarely dismiss a claim based on the statute of limitations, because this issue typically requires factual development. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed.Appx. 523, 524-25 (7th Cir. 2005).

At this stage, this Court cannot dismiss Reliford's Complaint as untimely. Reliford filed his EEOC charge on August 15, 2007. This means that an allegedly discriminatory act relating to his claims must have occurred on or after October 19, 2006 to be actionable. Construing the Complaint liberally, Reliford appears to assert at least some claims of discrimination and retaliation that are not time-barred. (*See, e.g.*, Compl. at 3 (alleging that he was "coerce[d]" into signing the agreement on March 14, 2007 in order to terminate him because of his age).) As UPS points out, however, Reliford alleges discriminatory actions that arguably occurred before October 19, 2006, such as discrimination at the time of his hiring and training. (Mem. in Supp. of Def.'s Mot. to Dismiss at 7.) The Complaint does not make clear, however, when the referenced training took place, making it impossible for this Court to hold as a matter of law that claims based on discrimination during the training period are barred.

Furthermore, Reliford states that the discrimination he suffered was "continuous," going "on and on without relief." (*Id.*) This suggests a claim of hostile work environment

discrimination, which is created when the employer's conduct is "sufficiently severe or pervasive to alter the conditions of the [victim's] employment and create an abusive working environment." *See Patton v. Keystone RV Co.*, 455 F.3d 812, 815-16 (7th Cir. 2006). The Seventh Circuit has assumed, without deciding, that plaintiffs may bring hostile work environment claims under the ADEA. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005). District courts of this circuit have allowed such claims to move forward. *See, e.g., Alexander v. CIT Tech. Fin. Servs. Inc.*, No. 01-C-7217, 2002 U.S. Dist. LEXIS 726, at *4-5 (N.D.Ill. Jan. 17, 2002); *Beesen-Dwars v. Morris*, No. 06 C 5593, 2007 U.S. Dist. LEXIS 54947, at *23 (N.D.Ill. July 24, 2007); *Caro v. Principi*, No. 00 C 7792, 2002 U.S. Dist. LEXIS 22690, at *14-15 (N.D.Ill. Nov. 21, 2002). This Court will therefore assume that Reliford may bring a hostile work environment claim against UPS.

Under a hostile work environment theory, a series of separate discriminatory acts "collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). A court may consider the entire scope of a plaintiff's claim, including behavior occurring outside the statutory time period, so long as any act contributing to the hostile environment took place within that time period. *Id.*; *see also Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 769-70 (7th Cir. 2007) (ordering new trial in hostile work environment case where relevant evidence from outside filing period was excluded). Construing all allegations in Reliford's favor, it is possible that, even if some of the alleged discriminatory acts of which he complains fell outside the limitations period, those acts contributed to a hostile work environment. Reliford's complaint therefore cannot be dismissed as time-barred.

*The Scope of the Underlying EEOC Charge*

UPS's final contention is that Reliford's claims must be barred because they differ from the allegations in his EEOC charge.  A plaintiff is required to file a charge with the EEOC before bringing an ADEA claim in federal court and may not bring claims that differ from those included in or reasonably related to the underlying charge.  *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  Claims are reasonably related if there is a "factual relationship between them," meaning they "describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).  The complaint may not expand the scope of the EEOC charge, but may only "clarify or amplify" the allegations in the charge.  *Cheek*, 31 F.3d at 503.  Even if they allege the same type of discrimination, claims are impermissible if they seek relief for "different episodes of discrimination." *Id.* at 501.  The purpose of the rule is to allow the EEOC to investigate and help settle the matter and to give the employer notice as to the conduct motivating an employee's grievance. *Id.* at 500.

The Seventh Circuit accords plaintiffs substantial leeway in determining whether claims are reasonably related to an EEOC charge. *Id.*  Plaintiffs "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim." *Id.*  Since most charges are filed by laypeople, courts read them liberally. *Ezell*, 400 F.3d at 1047.  Claims are related if the claim in the complaint could reasonably grow out of an EEOC investigation of the allegations in the charge. *Id.*  In *Ezell*, for example, an EEOC charge that alleged wrongful termination and a later hostile environment claim described the same conduct and individuals, and the Seventh Circuit allowed the latter claim to proceed. *Id.* at 1046-47.  Similarly, in *Muhammad v. Chicago Park District*, this Court allowed a plaintiff to claim discrimination in the terms and conditions of his employment, when his EEOC charge claimed "false termination and discrimination."  No.

06-C-0308, 2007 U.S. Dist. LEXIS 23885, at *13-14 (N.D.Ill. March 30, 2007).  In contrast, in

*Kirk v. Federal Property Management Corp.*, the Seventh Circuit found no reasonable

relationship between an EEOC charge claiming wrongful termination and failure to promote

based on race and a later claim that alleged an employer had failed to provide the plaintiff with

educational opportunities available to white employees.  22 F.3d 135, 139 (7th Cir. 1994).

In his EEOC Charge, Reliford claimed that he was discriminated against because of his

age and that he suffered retaliation for engaging in a protected activity in violation of the ADEA.

(Mem. in Supp. of Def.'s Mot. to Dismiss Ex. 1.)  He mentioned that he sustained a job injury

and was eventually terminated.  (*Id.*)  The EEOC charge placed UPS on notice that Reliford's

grievances responded to alleged discriminatory termination and retaliation for making a

protected complaint. These claims are reasonably related to the more specific allegations in

Reliford's Complaint that UPS forced him to sign the Agreement in order to terminate him

because of his age, breached his collective bargaining agreement, falsified his work records, and

subjected him to continuous discrimination.  If the Complaint is liberally construed, Reliford's

later claims arguably "clarify or amplify" the allegations in the EEOC charge.  The claims could

form part of the retaliatory actions Reliford allegedly suffered after making a protected

complaint and could have grown out of an EEOC investigation of the situation surrounding that

complaint and the circumstances of Reliford's termination.

More problematic are claims one through four that suggest that UPS discriminated

against Reliford during the hiring and training process.  These allegations were not reasonably

foreseeable given that the EEOC charge mentioned only Reliford's termination and retaliation

for making a protected complaint.  The relationship between the EEOC charge and these claims

is much like that in *Kirk*, in which wrongful termination and a failure to provide educational

opportunities were not reasonably related because they grew out of different sets of facts.  *See* 22 F.3d at 139.  Nothing in Reliford's EEOC charge is sufficiently related to these later claims to alert the EEOC to investigate UPS's hiring and training practices or to put UPS on notice that Reliford's charge was at all related to those practices.  *See Cheek,* 31 F.3d at 500 ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge").  Rather, these allegations expand the scope of the charge originally made to the EEOC by referring to a different "episode of discrimination."  *Id.* at 501.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with respect to counts one through four of the Complaint and DENIED with respect to all remaining counts.


Enter:

/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **July 8, 2008**

14